1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                    SOUTHERN DIVISION PIKEVILLE

3
   UNITED STATES OF AMERICA,
4
          Plaintiff,
5
                                 Docket No. 7:23-CR-10
6  VS.                           At Lexington, Kentucky
                                 Thursday, June 20, 2024
7                                11:01 a.m.
   JOSHUA D. HABERN,
8
          Defendant.
9                          - - -

10      TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
          U.S. DISTRICT JUDGE KAREN K. CALDWELL
11
                           - - -
12
   APPEARANCES:
13
   For the United        W. PIERCE NESBITT
14 States:               Assistant United States Attorney
                         601 Meyers Baker Road
15                       Suite 200
                         London, Kentucky  40741-3035
16                       (606) 330-4833

17 For the Defendant:    NOAH ROBERT FRIEND
                         Noah R. Friend Law Firm, PLLC
18                       P. O. Box 341
                         Versailles, Kentucky  40383
19                       (606) 369-7030

20
   Court Reporter:       SANDRA L. WILDER, RMR, CRR
21                       Official Court Reporter
                         313 John C. Watts Federal Building
22                       330 West Broadway, Suite 327
                         Frankfort, Kentucky  40601
23                       (859) 5161-4114

24
          Proceedings recorded by mechanical stenography,
25   transcript produced by certified court reporter.

1          *(Proceedings commenced at 11:01 a.m. in open*
2 *court.)*
3          THE COURT:  Good morning.
4     Would the Clerk please call the matter to come before
5 the Court.
6          COURTROOM DEPUTY:  Yes, Your Honor.
7     Pikeville Criminal Action Number 23-10, United States
8 of America versus Joshua D. Habern, called for sentencing.
9          THE COURT:  Would the United States make its
10 appearance for the record.
11          MR. NESBITT:  Yes, Your Honor.  Pierce Nesbitt on
12 behalf of the United States.
13          THE COURT:  Mr. Nesbitt.
14     For the defense.
15          MR. FRIEND:  Noah Friend on behalf of Joshua
16 Habern, who's seated to my right.
17          THE COURT:  Mr. Friend.  Mr. Habern.
18     I know that this sentencing hearing was continued from
19 a previous hearing.  I don't remember how far we got, so
20 let's start from the beginning just in case.
21     Has the United States received and reviewed the
22 presentence report?
23          MR. NESBITT:  We have, Your Honor.
24          THE COURT:  And I saw no objections.  Are there
25 any to bring to my attention today?

1           MR. NESBITT:  Judge, we do not have any

2    objections.

3           THE COURT:  Very well.

4       Mr. Friend, I saw an objection to the, I believe it's

5    the career offender status; is that correct, or is it armed

6    career criminal?

7           MR. FRIEND:  Career offender, Your Honor.

8           THE COURT:  Okay.

9           MR. FRIEND:  We have reviewed the PSR, and I have

10   given a copy of it to Mr. Habern.

11      I don't know that really any argument is needed on the

12   objection.  We understand the *Maynard* case, and the Court's

13   familiarity with the *Maynard* case.

14          THE COURT:  Very well.  Very well.

15      And are there any other objections that I should take

16   up today?

17          MR. FRIEND:  None, Your Honor.  Thank you.

18          THE COURT:  Very well.

19      I want to overrule the objection based on the *Maynard*

20   case.  I think it's directly on point here.  And I even

21   notice that the redacted sentencing memorandum kind of

22   morphs over into the 3553(a) factors, and I think we can

23   have some conversations with regard to the statute.  I will

24   overrule the objection.

25      Accordingly, the Court determines that the appropriate

1 advisory guideline range for this defendant is for 262 to

2 327 months on Count 2, plus a minimum mandatory sentence of

3 60 months on Counts 1 and 8 that must run consecutive to the

4 time imposed on Count 2.  That's based on a total offense

5 level of 31, and a Criminal History Category of VI.

6     The Court will also adopt the factual findings as have

7 been modified, I believe, in this case by the probation

8 office.

9     Are there motions from the United States?

10       MR. NESBITT:  Your Honor, we would move to dismiss

11 Counts 3 through 7 of the indictment, and also move for the

12 third level off for acceptance of responsibility.

13       THE COURT:  Very well.  The third level off for

14 acceptance of responsibility, I believe, was taken into

15 account for the calculations.  The Court will dismiss all

16 counts except those of conviction.

17     I have received the defendant's sentencing memorandum.

18 I have received some medical records, and also a number of

19 letters from friends and family in support of this

20 defendant.

21     Mr. Habern, I'm going to hear from the lawyers in just

22 a second, but before I do, is there anything that you would

23 like to say to the Court to aid it in its sentencing

24 determination?

25     He can remain seated.  It's hard to stand up there with

1 all that stuff on, so you can just speak from your chair.

2          THE DEFENDANT:  I just want to say I'm —— I grew

3 up rough and, you know, for going through, all through

4 school and high school special education classes, always

5 getting beat up and picked on at home and school.  I just

6 never really could, like, control my anger and stuff.  And I

7 know when I first got put on medication, that helped me out

8 a lot, but the best thing that's helped me is my kids and

9 stuff.  And, I don't know, I wish I never did this, you

10 know, but I feel that I'm getting ready to pay my dues and

11 stuff, but.

12          THE COURT:  Well, I appreciate your comments.

13 Thank you very much.

14      Mr. Friend.

15          MR. FRIEND:  Yes, Your Honor.  I think as the

16 Court's sort of accurately understood the sentencing

17 memorandum as I think the analysis of 3553(a) factors are

18 very important in this case in terms of what the correct

19 sentence would be for the defendant what would be sufficient

20 but not greater than necessary under the statute.  And we've

21 requested that a sentence of 180 months would be appropriate

22 in this case.  That would be slightly over the guideline

23 range if we didn't have the career offender issues, and is

24 certainly a significant period of time for the defendant.

25      In terms of history and characteristics, I certainly

1  won't get into anything that's not in the PSR, but

2  Mr. Habern and I went to the same high school at the same

3  time, and it was Pikeville High School, less than 400

4  students.  So I've known Mr. Habern for a long time, and

5  I've known that he had had some struggles in school and some

6  issues with that that he had to deal with at that time.

7        I will say in looking at the PSR, paragraph 69, the

8  drugs and alcohol background, I think in all the years I've

9  been doing this, I don't think I have seen a defendant who

10 had that level of exposure to alcohol and controlled

11 substances from such a young age.

12       And again, I'm not one to cast aspersions on anyone's

13 family, or anything like that, understanding things, I have

14 children of that age and can't imagine children that age

15 being exposed to that and what that can do to somebody in

16 terms of developmental issues and learning to deal with

17 basically the stressors in life.

18       I think again, the medical records from 2018, I think,

19 which were referenced within the PSR, which we included some

20 of those records there under seal from 2018, shows that the

21 defendant was dealing with, you know, worsening depression,

22 suicidal issues.  It noted a remote history of admission for

23 similar reasons.

24       And on sealed exhibit page 734 on the bottom as it

25 discusses that he has anger and rage and he blacks-out,

can't recall anything.  Doesn't know what triggers it.

A reflection there on page 690 that his insight and judgment were limited.  And, of course, that he also tested positive at that time for meth, cocaine, marijuana and opiates.  But at the same time, he went there and, you know, short of trying to get some help, on that same page, that he doesn't want to act that way in front of his children.

As we noted in the memorandum and the courts have recognized mental illness and substance abuse, that the Court can look at factors in 3553.  They're not excuses for criminal behavior, but it is something that we need to consider in trying to arrive at that sentence that is appropriate under the guidelines.  And certainly, for skipping quickly over history and characteristics, then to the need for medical treatment, substance abuse treatment, you know, all those issues are there.  And BOP is well-positioned with a sentence of this length to be able to provide some intense treatment, medication, management for again, diagnosed issues that the defendant has in trying to get him onto the right path for eventual release, supervised release.  Of course, saying that any mental health treatment would need to continue into a period of supervised release to make sure that he's incorporated back into society.

I was also struck by the letters.  How much I've spoken with Mr. Habern about how many of these were young people

1  have indicated that he was a factor in helping them go back

2  to school and in finishing their education.

3      I think that Mr. Newsome, if I recall, has become a

4  really good student at Alice Lloyd, maybe about to transfer

5  to Old Miss to finish his education there.

6      And again, many of them who indicated that, you know,

7  they had suffered sort of personal tragedies in their

8  family, and that Mr. Habern had been of assistance to them.

9      Actually, I had a cousin who passed away in a car

10 accident, and Mr. Habern was one of the first people on the

11 scene because it was near his house.  And my cousin was able

12 to discuss with Mr. Habern getting out of it.  Again, that's

13 borne out by the letters in terms of his giving nature.

14     It is then, and I think I can use the term paradoxical

15 to look at sort of the behavior that underlies this

16 indictment.  And we don't want to in any way to downplay the

17 seriousness of that offense.

18     And with the guideline ranges that exist for some of

19 these crimes and things that are involved, I think

20 Mr. Habern understands that his sentence, it's hard to

21 believe that you could get 262 to 367, but it could be worse

22 if circumstances were slightly different.

23     So all that said, Your Honor, we do believe that a

24 sentence of 180 months, which again, as we sort of discussed

25 the *Maynard* case, it's difficult to say that not all career

1    offenders are created equally when we go back and look at

2    what the underlying offenses are that led to that

3    designation.

4        And so I think that the mental health issues that

5    Mr. Habern has that are well-documented go some way to

6    explaining a little bit of what's caused this criminal

7    behavior throughout the past.

8        And again, for someone, for someone his age, you know,

9    a 15-year sentence with supervised release to follow is a

10   very serious sentence.

11       He has already missed, I believe, the birth of one

12   grandchild while he's been in custody, and I think another

13   one's on the way.

14               THE DEFENDANT:  Two.

15               MR. FRIEND:  Two more are on the way.

16       And for someone who mentions the rewards of family,

17   he's going to be away from family for a long time.  He

18   understands that's a direct consequence of his actions.

19       A sentence of that length, however he looks at it,

20   would hopefully be able to get around and be around some of

21   his grand kids as they're getting into high school.

22       So, Your Honor, we would ask for a sentence of 180

23   months with supervised release to follow, designation as

24   close to his home as possible at an appropriate facility

25   and, of course, that any drug, alcohol and mental health

1 treatment that's available in BOP or on supervised release

2 would be imposed as a term of the sentence.

3         THE COURT:  Thank you.

4     Mr. Nesbitt.

5         MR. NESBITT:  Yes, Your Honor.

6     The government's recommendation in this case is going

7 to be a sentence of 312 months with four years of supervised

8 release to follow.

9     Turning to the 3553(a) factors, I know the Court has

10 fairly read the PSR, but I did want to emphasize a few

11 points about Mr. Habern's characteristics.

12     He's now 41 years old.  He's been an adult for 23

13 years.  This case marks his 23rd criminal conviction.  He

14 claims no legitimate employment in the last decade.  He's

15 not just a career offender by the guidelines standard.

16 Crime has been his occupation for a quarter century.

17     It's not a case where the designation is a result of a

18 couple of outliers relative to the defendant's past.

19     This is Mr. Habern's third trafficking conviction.

20 He's been convicted of felony criminal abuse and assault no

21 less than six times.  He's brutalized and beaten both of his

22 ex-wives, and at least one other mother of his children.

23     Virtually every time the defendant has been on paper,

24 whether probation, parole or bond, he's repeatedly violated

25 conditions, which is a good segue to the nature and

circumstances of the incidents.

On November 1, 2021, he was paroled, from among others, a felony meth possession sentence.  Mr. Habern was on the street for barely half-year before he was found with an aggravated quantity of meth, nearly a dozen firearms, many of them loaded, and a butcher's knife, all in a bedroom with a three-year-old child.

He's revoked again for a few months, but within three weeks of his September 2nd release, he sold fentanyl to an informant, and the next week, KSP finds more fentanyl, an aggravated quantity of meth, and another loaded gun in his apartment.

Still undeterred while on bond for the September 2022 charges, Mr. Habern was found in his child's home with an aggravated quantity of fentanyl.  The seriousness of the offense, Mr. Habern is trafficking in aggravated quantities of the two most devastating controlled substances impacting this Commonwealth, meth and fentanyl.  There's just no doubt about it.  He did so armed with an arsenal.

These crimes are gravely serious, and he rightfully faces a potential life sentence.

Mr. Habern, by his conduct, has proven he has no respect for the law.  Decades of convictions, court-imposed conditions, and repeated revocations have not deterred him.

Mr. Habern's history shouts the only way to prevent him

1  from committing crime is to lock him up.  With his history

2  of violence and volatility, the fact that he continues to

3  arm himself in connection with his trafficking presents a

4  risk to the public that will be difficult to overstate.

5       Now, I recognize that Mr. Habern as a child suffered in

6  a way that no child should.  But he's now 41 years old, and

7  unfortunately, what his record shows is whether as a result

8  of that childhood trauma or his current mental health

9  issues, he's simply too dangerous to be on the streets.  And

10 as a result, I don't find that history at this stage of his

11 life particularly mitigating from a sentencing perspective,

12 as awful as it is.  And aggravators in this case are near

13 the top of the guideline range.

14      And for those reasons, the United States is going to

15 request a sentence of 312 months with four years of

16 supervised release to follow.

17            THE COURT:  Thank you.

18            These cases are always difficult.  Clearly, this

19 defendant, like so many who come before the Court, has had a

20 disadvantaged background.  When I see daily and regular

21 marijuana, alcohol, and prescription pain use from the age

22 of eight, it is clear that this defendant has suffered

23 developmentally, and that he has suffered from abuse and

24 neglect as a child and untreated mental illness for most of

25 his life.  Nevertheless, we have to look at the conduct with

1    which the Court is confronted.

2        These charges are incredibly serious, not only with

3    deadly weapons involved, but deadly drugs involved on a

4    repeated basis.  The past crimes are serious.

5        This defendant has a Criminal History Category of VI,

6    which is the highest category.  It is clear that this is a

7    serious crime and one that requires a serious sentence to

8    promote respect for the law, to protect the public from

9    further crimes of this defendant, to send a signal of

10   general deterrence, and also to get this defendant the much

11   needed treatment that he has been deprived of for most of

12   his life, and in some cases, didn't take advantage of when

13   it was given to him.

14       I am going to engage in a slight downward variance

15   on -- from the guidelines because I do believe that justice

16   should be tempered with mercy.

17       Therefore, it is the judgment of this Court that this

18   defendant is sentenced to a term of 240 months on Counts 1

19   and 8 to run concurrently, and 60 months on Count 2 to run

20   consecutively to Counts 1 and 8, for a total term of 300

21   months.

22       This sentence should run concurrently with any

23   anticipated state sentence that may be imposed.  And it may

24   be that the state will not proceed on its charges given the

25   length of the sentence in this case.

1    In 30 years the defendant will be 71.  This sentence is
2    sufficient to meet all of the objectives of Title 18 United
3    States Code, Section 3553(a).
4        Now, it's recommended, Mr. Habern, that while you're in
5    prison that you shall participate in substance abuse
6    treatment.
7        It's recommended that you participate in mental health
8    treatment.
9        And it's recommended that you participate in some kind
10   of educational, vocational job skills training.
11       I know you've got a lot of time ahead of you, but if
12   you can keep yourself busy, I find that that makes even hard
13   time pass better.
14       Now, upon release from prison, you're going to be on
15   supervised release for five years on each of Counts 1, 2 and
16   8 to run concurrently, for a total term of five years.
17       Within 72 hours of your release from prison, you must
18   report in person to the United States Probation Office in
19   the district to which you are released.
20       Now, while you're on supervised release, you shall not
21   commit another federal, state or local crime, and you must
22   comply with all the standard conditions that have been
23   adopted by this Court, along with the following:
24       You must not possess a firearm, destructive device,
25   dangerous weapon or ammunition.

1    You must not use a controlled substance unlawfully.

2 And you've got to submit to drug tests within 15 days of

3 release from prison, and at least two periodic drug tests

4 thereafter.

5    Also, you shall not use alcohol.  You must participate

6 in drug and alcohol testing at the direction and the

7 discretion of the United States Probation Office.  That may

8 include urinalysis testing or any other form of substance

9 testing.

10    You must not obstruct or attempt to obstruct or tamper

11 with any of the required substance testing, and you must not

12 knowingly use any kind of substance that might interfere

13 with the efficacy or accuracy of the testing mechanism.

14    Because of your involvement with guns, you must submit

15 your person, properties, homes, residences, vehicles,

16 storage units, papers, offices, computers as defined in

17 Title 18 United States Code, Section 1030(e)(1), or other

18 electronic storage devices that are not included in that

19 definition, you must submit all of them to a search at the

20 direction and the discretion of the United States Probation

21 Office.

22    Now, if you're living with somebody else, you need to

23 tell them that you're subject to this search condition.  And

24 your failure to submit to such a search could be grounds for

25 revocation of your supervised release.

1    Now, based on your current financial situation, the

2 Court's not going to impose a fine or restitution, but

3 you've got to pay a special assessment of $300, and that's

4 due immediately.

5    Preliminary judgment of forfeiture, I believe that's at

6 Docket Entry Number 24, is final with sentencing.  It will

7 be made part of this judgment.

8    Is there any legal reason sentence should not be

9 imposed as stated, Mr. Nesbitt?

10        MR. NESBITT:  I don't believe so, Your Honor.

11        THE COURT:  Mr. -- I just looked right at you and

12 forgotten your name, Mr. Friend.

13        MR. FRIEND:  It's the haircut; it is.

14        THE COURT:  It is.  You look different.

15        MR. FRIEND:  No objections, Your Honor.

16        THE COURT:  Very well.  A judgment and commitment

17 order will be prepared consistent with this pronouncement.

18    I will recommend that the defendant be housed at a

19 facility nearest his home and family.  That is the practice

20 of the United States Bureau of Prisons, but much of it

21 depends on their availability of space.  But I'll include

22 that in the judgment.

23    Now, Mr. Habern, I want you to listen carefully to the

24 Clerk of the Court.  She's about to give you some

25 information regarding rights to appeal or any that you might

1  have waived.

2      I'm going to give you a copy of this information to

3  keep for your files, and I'm going to ask you and Mr. Friend

4  to sign a copy of and return it to the Court for its records

5  as evidence that the information was given to you here in

6  court.  I know Mr. Friend's going to keep you well-advised.

7      Listen.

8          COURTROOM DEPUTY:  Criminal defendants have the

9  right to appeal their case to the Sixth Circuit Court of

10  Appeals, which on proper appeal will review the case and

11  determine whether there has been an error of law.

12      However, a defendant may waive those rights as part of

13  a plea agreement, and you have waived your right to appeal

14  the guilty plea and conviction.  Such waivers are generally

15  enforceable.  But if you believe the waiver's unenforceable,

16  you can present that theory to the appellate court.

17      If you do not have the sufficient funds to pay for the

18  appeal, you have a right to apply for leave to appeal

19  informa pauperis, which means you may appeal without paying

20  for it.

21      If you are without the services of an attorney, and

22  desire to appeal, upon request, the Clerk of the Court shall

23  prepare and file a notice of appeal on your behalf.  This

24  notice of appeal must be filed within 14 days from the date

25  of entry of the written judgment.

1      If you do not have sufficient funds to employ an

2 attorney, you may request appointment of counsel to

3 prosecute the appeal for you.

4      Mr. Friend.

5           *(Defendant and counsel conferring)*

6           THE COURT:  The record will reflect that the

7 defendant --

8           MR. FRIEND:  May I approach?

9           THE COURT:  You may.

10      -- and his counsel have executed the acknowledgement

11 form, which will be filed in the record.

12      Is there anything further for the United States,

13 Mr. Nesbitt?

14           MR. NESBITT:  No, Your Honor.  Thank you.

15           THE COURT:  Anything further for this defendant,

16 Mr. Friend?

17           MR. FRIEND:  No, Your Honor.  Thank you.

18           THE COURT:  All right.  Thank you all very much.

19 That concludes this hearing.

20      We'll be in recess.

21           *(End of proceedings – 11:26 a.m.)*

22                    * * * * *

23

24

25

1                    **C E R T I F I C A T E**

2            I, SANDRA L. WILDER, RMR, CRR, certify that the

3    foregoing is a correct transcript from the record of

4    proceedings in the above-entitled matter.

5    /s/ Sandra L. Wilder RMR, CRR      Date of Certification:
     Official Court Reporter           August 15, 2024
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25